Howard M. Levine, OSB No. 800730
hlevine@sussmanshank.com
Jesse C. Stewart, OSB No. 200478
jstewart@sussmanshank.com
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130

   *Attorneys for Northpoint Commercial Finance LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| NORTHPOINT COMMERCIAL FINANCE LLC, a Delaware limited liability company, | Case No. 6:20-cv-00785-MK |
| Plaintiff, | |
| v. | PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY |
| AL'S TRAILER SALES OF SALEM, INC., an Oregon corporation; SUTHERLIN RV, INC., an Oregon corporation; REALITY RV AND TRAILERS INC., an Oregon corporation; A.O.A. GROUPS, INC., a California corporation; 4843 PORTLAND ROAD, LLC, an Oregon limited liability company; 347 MYRTLE STREET LLC, an Oregon limited liability company; JAMIE L. MCGOWEN; MURLYN MCGOWEN; SADIA SYED; NASEEMA DHAR; and UNDLEEB Y. DHAR, | Pursuant to Fed. R. Civ. P. 64 and 65 |
| | EXPEDITED HEARING REQUESTED ORAL ARGUMENT REQUESTED |
| Defendants. | |

## TABLE OF CONTENTS

CERTIFICATIONS PURSUANT TO FRCP 64 AND 65 AND LR 7-1 .....................................1

INTRODUCTION, BACKGROUND AND SPECIFIC RELIEF REQUESTED ........................2

OVERVIEW ...........................................................................................................................2

STATEMENT OF FACTS .......................................................................................................5

        I.  Northpoint and the Borrower Defendants entered into Loan and Security
        Agreements for the purpose of financing Defendants' RV dealerships.................5

        II.  Northpoint perfected its security interests in the Collateral.............................8

        III. Northpoint loaned substantial sums to the Borrower Defendants pursuant to
        the Loan and Security Agreements, allowing the Borrower Defendants to
        purchase Inventory for their dealerships ..............................................................8

        IV.  The Borrower Defendants breached the Loan and Security Agreements by
        selling Inventory out of trust, failing to remit payment of the Invoice Cost to
        Northpoint, and allowing insurance to lapse .......................................................8

                A.  The Borrower Defendants failed to remit payment of Invoice Costs to
                Northpoint, breaching Section 2(a) of the Loan and Security Agreements.9

                        1.  Northpoint's inspections of Al's Dealership revealed missing,
                        unpaid inventory Collateral. ........................................................9

                        2.  Northpoint's inspections of Reality's Dealership revealed
                        missing, unpaid inventory Collateral ..........................................10

                          3.  Northpoint's inspections of Sutherlin's Dealership revealed
                        missing, unpaid inventory Collateral ..........................................11

                  B.  The Borrower Defendants allowed required insurance to be cancelled,
                  breaching Section 3 of the Lease and Security Agreements....................12

        V.  When Northpoint confronted the Borrower Defendants regarding the missing
        Northpoint Collateral and withheld Invoice Cost payments from Northpoint, the
        Borrower Defendants admitted to severe financial distress and admitted using the
        Invoice Cost proceeds to pay other debts............................................................12

Page i - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO
SHOW CAUSE, AND PRELIMINARY INJUNCTION AND ORDER FOR PROVISIONAL
PROCESS – REPLEVIN AND CLAIM AND DELIVERY

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

VI. .... The Borrower Defendants have ignored Northpoint's demands surrender of the Northpoint Collateral and failed to pay accelerated amounts due under the Loan and Security Agreements ................................................................. 17

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE ....................................... 18

VII.  Introduction ................................................................................. 18

VIII. Argument ..................................................................................... 19

A.  Northpoint is Entitled to a Temporary Restraining Order and Preliminary Injunction ............................................................. 19

1.  Standard for Temporary Restraining Order and Preliminary Injunction ................................................................. 19

2.  Northpoint is Likely to Succeed on the Merits ........................ 20

a.    Breach of the Loan and Security Agreements ........... 20

b.    Conversion ............................................................. 21

3.  Northpoint Will Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief ...................................... 22

4.  The Balance of Equities Tips Sharply in Northpoint's Favor .. 25

5.  A Temporary Restraining Order and Preliminary Injunction Serves the Public Interest ........................................... 26

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION FOR PROVISIONAL PROCESS OF CLAIM AND DELIVERY OR REPLEVIN .......................... 26

I.  Introduction ................................................................................. 26

II.  Argument ..................................................................................... 27

A. .  Northpoint is Entitled to the Provisional Relief of Claim and Delivery or Replevin ............................................................. 27

1.  Standard for the Provisional Relief of Claim and Delivery or Replevin ................................................................. 27

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

2. Northpoint has Satisfied the Requirements for Issuance of Provisional Process under ORCP 83............................................28

3. Northpoint Should Not be Required to Post a Bond.................31

CONCLUSION.......................................................................................................31

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allstate Ins. Co. v. Rote*
No. 3:16-cv-01432-HZ, 2016 WL 4191015 (D. Or. Aug. 7, 2016)........................................25

*Am. Trade Partners, L.P. v. A-1 Int'l Importing Enterprises, Ltd.*
757 F. Supp. 559 (E.D. Pa. 1991) .............................................................................24

*Bearoff v. Craton*
830 S.E.2d 362 (Ga. Ct. App. 2019) ........................................................................21

*Berda v. Grand Lodge of IAM*
584 F.2d 308 (9th Cir. 1978) ...................................................................................20

*Brooks v. Branch Banking & Tr. Co.*
107 F. Supp. 3d 1290 (N.D. Ga. 2015) ...................................................................20

*California v. Azar*
911 F.3d 558 (9th Cir. 2018)
*cert. denied*, 139 S. Ct. 2716 (2019) ......................................................................22

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*
321 F.3d 878 (9th Cir. 2003) ...................................................................................24

*Doran v. Salem Inn, Inc.*
422 U.S. 922 (1975) .................................................................................................25

*E. Bay Sanctuary Covenant v. Trump*
950 F.3d 1242 (9th Cir. 2020) .................................................................................22

*eBay Inc. v. MercExchange, L.L.C.*
547 U.S. 388 (2006) .................................................................................................19

*Fid. Nat. Title Ins. Co. v. Castle*
No. C 11-00896 SI, 2011 WL 5882878 (N.D. Cal. Nov. 23, 2011) ................................23, 24

*FTC v. Affordable Media, LLC*
179 F.3d 1228 (9th Cir. 1999) .................................................................................25

*Gilder v. P.G.A. Tour, Inc.*
936 F.2d 417 (9th Cir. 1991) ...................................................................................20

Page iv – PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE, AND PRELIMINARY INJUNCTION AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

**SUSSMAN SHANK LLP, ATTORNEYS AT LAW**
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

*Hartford Cas. Ins. Co. v. Intrastate Constr. Corp.*
No. 10-61064-CIV, 2015 WL 13390523 (S.D. Fla. Apr. 13, 2015)........................................24

*Hoxworth v. Blinder, Robinson & Co.*
903 F.2d 186 (3d Cir. 1990) ...............................................................................................22

*In re Estate of Ferdinand Marcos, Human Rights Litig.*
25 F.3d 1467 (9th Cir. 1994) .............................................................................................23

*In re Focus Media Inc.*
387 F.3d 1077 (9th Cir. 2004) ...........................................................................................24

*Johnson v. Couturier*
572 F.3d 1067 (9th Cir. 2009) ...........................................................................................24

*McCormick v. Claytor*
441 F. Supp. 622 (D. Or. 1977) .........................................................................................20

*Ocean Beauty Seafoods, LLC v. Pac. Seafood Grp. Acquisition Co.*
648 F. App'x 709 (9th Cir. 2016) .......................................................................................26

*Okefenokee Aircraft, Inc. v. PrimeSouth Bank*
676 S.E.2d 394 (Ga. Ct. App. 2009) .............................................................................20, 26

*Oregon Bank v. Fox*
699 P.2d 1147 (Or. Ct. App. 1985) .................................................................................21, 26

*Perfect JO, Inc. v. Google, Inc.*
653 F.3d 976 (9th Cir. 2011) .............................................................................................19

*Pimentel v. Dreyfus*
670 F.3d 1096 (9th Cir. 2012) ...........................................................................................20

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*
240 F.3d 832 (9th Cir. 2001) .............................................................................................19

*Vanguard Outdoor, LLC v. City of Los Angeles*
648 F.3d 737 (9th Cir. 2011) .............................................................................................19

*William Goldberg & Co. v. Cohen*
466 S.E.2d 872 (Ga. Ct. App. 1995) ..................................................................................21

*Wilson v. Watt*
703 F.2d 395 (9th Cir. 1983) .............................................................................................20

Page v – PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE, AND PRELIMINARY INJUNCTION AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

*Winter v. NRDC*
   555 U.S. 7 (2008)............................................................................................19


**Statutes**

OCGA § 11–9–609(a)(1).............................................................................20, 26

ORS 706.008.....................................................................................................31


**Rules**

Fed. R. Civ. P. 64(a)..........................................................................................27

Fed. R. Civ. P. 65(c)..........................................................................................32

ORCP 82A(3)....................................................................................................31

ORCP 83............................................................................................................27

ORCP 83A.............................................................................................27, 28, 29, 30

ORCP 85..................................................................................................27, 28, 31

ORCP 85A..........................................................................................................27

**SUSSMAN SHANK LLP, ATTORNEYS AT LAW**
**1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089**
**TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130**

**CERTIFICATIONS PURSUANT TO FRCP 64 AND 65 AND LR 7-1**

Plaintiff Northpoint Commercial Finance LLC ("**Northpoint**") requests that an expedited hearing be set on Northpoint's Motion for Temporary Restraining Order ("**TRO Motion**") and Motion for Replevin and Claim and Delivery ("**Replevin Motion**", and together, the "**Motions**"), at the Court's first available date and time.

Consistent with the requirements of Rule of Civil Procedure 65 and Local Rule 7-1, the undersigned counsel for Northpoint, Howard M. Levine, attempted to confer in good faith with Defendants' President, Jamie McGowen, by telephone conference on May 24, 2020 at 12:05 p.m. regarding expedited scheduling of the Motions and to discuss resolution of disputes regarding the issuance of provisional process against Defendants. Ms. McGowen did not answer the phone, and instead the call proceeded to voicemail. Undersigned counsel left a voice message stating the nature of the call and that Northpoint would be seeking an expedited hearing on the Motions. Mr. Levine left his office number on her voice mail and invited her to return his call.

Based upon the foregoing certification, and the facts set forth in the Declarations filed in support of the Motions, Northpoint will suffer immediate and irreparable harm without entry of Orders on the Motions without further notice to the Defendants. A proposed order is submitted herewith.

//

//

//

//

//

Page 1 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

### INTRODUCTION, BACKGROUND, AND SPECIFIC RELIEF REQUESTED

Northpoint is seeking, (1) pursuant to Federal Rules of Civil Procedure 65, a temporary restraining order and order to show cause why a preliminary injunction should not be entered in order to recover Northpoint's Collateral (as defined below) that is in the wrongful possession and control of Defendants Al's Trailer Sales of Salem, Inc's ("**Al's**"), Sutherlin RV, Inc. ("**Sutherlin**"), and Reality RV and Trailers, Inc. ("**Reality**") (collectively, the "**Borrower Defendants**"), and (2) pursuant to Federal Rule of Civil Procedure 64 and Oregon Rules of Civil Procedure 83 and 85, the provisional process remedy of claim and delivery or replevin with respect to Northpoint's Collateral that the Borrower Defendants are wrongfully retaining and controlling in direct violation of Northpoint's rights to Northpoint's Collateral.[1] Northpoint supports the Motions with the facts and arguments detailed below.

The Borrower Defendants should be required to cooperate with Northpoint by assisting it in identifying the locations where Northpoint's Collateral is located, provide keys and combinations to locks so that Northpoint can access and recover Northpoint's Collateral, and be prohibited from moving, selling, transferring, damaging, or destroying any of Northpoint's Collateral or otherwise interfering with Northpoint's efforts to recover Northpoint's Collateral.

### OVERVIEW

Northpoint's business includes the secured financing of recreational vehicle dealers so dealers can acquire inventory for sale in the normal course of business. The Borrower Defendants are in the business of selling recreational vehicles, trailers, parts, and accessories (collectively

---

[1] All terms not specifically defined herein shall have the meanings set forth in the Complaint.

Page 2 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

"**RVs**") through three separate corporations. The Borrower Defendants each granted Northpoint a security interest in all of their assets, including but not limited to inventory, RVs, parts, accessories, accounts, and other assets, and the proceeds of the foregoing ("**Northpoint's Collateral**") to secure the Borrower Defendants' obligations to Northpoint.

Defendants Al's, Sutherlin, and Reality sell RVs through dealerships located in Salem, Oregon, Sutherlin, Oregon, and Woodburn Oregon. The Borrower Defendants' agreements with Northpoint require them to hold in trust for Northpoint the proceeds from each vehicle sale, and to pay Northpoint the Invoice Cost of each vehicle from those sale proceeds. The Invoice Cost represents the amount of money, plus interest, that Northpoint advanced to the Borrower Defendant to acquire the item of inventory that is sold. This way, Northpoint will be repaid the acquisition cost each Borrower Defendant incurred and Northpoint advanced when the Borrower Defendants purchased inventory.

Since March 2020, as more fully set forth in the Declarations supporting these Motions, the Borrower Defendants sold inventory subject to Northpoint's security interests, breached their obligation to hold the sale proceeds in trust for Northpoint's benefit, retained the sale proceeds, and failed to pay Northpoint the Invoice Cost from those sale proceeds.

The Borrower Defendants are in default to Northpoint. The principal balance due to Northpoint from Al's and Realty is currently $1,991,924.52 million, including trust funds of $287,015.53. The principal balance due from Sutherlin is currently $497,736.28, including trust funds of $53,278.24. Further, as a result of the Borrower Defendants' defaults, Northpoint is entitled to immediate and exclusive possession of Northpoint's Collateral.

Despite Northpoint's demand on the Borrower Defendants to make Northpoint's Collateral

Page 3 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

available for Northpoint to recover, the Borrower Defendants have failed and refused to do so, and continue to be in exclusive possession of the collateral in contravention of Northpoint's rights. The Borrower Defendants' actions violate Northpoint's legal right to immediate and exclusive possession of Northpoint's Collateral under its agreements with the Borrower Defendants, the Uniform Commercial Code, and other applicable law.

Northpoint will suffer immediate and irreparable harm if the Motions are not granted. As more fully set forth in the Declarations supporting this Motion, the Borrower Defendants continue to maintain wrongful and exclusive possession and control of Northpoint's Collateral in direct contravention of Northpoint's rights to Northpoint's Collateral, and have not and cannot pay Northpoint.

Accordingly, Northpoint seeks entry of an order pursuant to Federal Rule of Civil Procedure 65 directing the Borrower Defendants to immediately grant Northpoint access to the Borrower Defendants' sales lots, and anywhere else Northpoint's Collateral is located or may be found, to cooperate with Northpoint in allowing Northpoint to obtain physical access to Northpoint's Collateral, and not to interfere with Northpoint's efforts to recover Northpoint's Collateral.  To facilitate that relief, Northpoint also seeks an order pursuant to Federal Rule of Civil Procedure 64 and Oregon Rules of Civil Procedure 83 and 85 directing the Borrower Defendants to immediately deliver possession and control of Northpoint's Collateral to Northpoint.

Entry of a temporary restraining order and claim and delivery with respect to Northpoint's Collateral is appropriate because there is a substantial likelihood of irreparable harm to Northpoint if the relief is not granted. Because the Borrower Defendants are in wrongful possession of

Page 4 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

Northpoint's Collateral and proceeds from Northpoint's Collateral, they will not suffer any harm

if the injunctive relief is granted. Furthermore, based upon the statements of Jamie McGowen,

President of the Borrower Defendants, and Sadia Syed, one of the guarantors of the obligations to

Northpoint, to Northpoint representatives, the Borrower Defendants cannot pay Northpoint. (*see*

Molyneux Decl., ¶ 27)

## STATEMENT OF FACTS

I.    **Northpoint and the Borrower Defendants entered into Loan and Security Agreements for the purpose of financing Defendants' RV dealerships.**

Northpoint is in the business of providing financing for retail vehicle dealers selling RVs,

recreational trailers, parts, and accessories. (Layton Decl. ¶ 5) Defendants operate recreational

trailer dealerships in Salem, Oregon, Woodburn, Oregon, and Sutherlin, Oregon. (Layton Decl. ¶

6) Beginning in 2016, the Borrower Defendants entered into commercial financing agreements

with Northpoint, for the purpose of stocking their dealerships with inventory. (Layton Decl. ¶¶ 5,

11, 13, 42) The Borrower Defendants' financing relationships with Northpoint are governed by

the following contracts:

**The Loan and Security Agreements Applicable to All Borrower Defendants.**

- Northpoint and Al's are parties to a "Loan and Security Agreement" dated February 9, 2016, initially between Northpoint and Al's Trailer Acquisition Company ("**Al's Acquisition**") (the "**Al's Loan Agreement**").[2]  (Layton Decl. ¶ 11);

- Northpoint and Sutherlin are parties to a "Loan and Security Agreement" dated

---

[2] On March 1, 2016, Al's Acquisition changed its name to Al's. On March 8, 2016, Al's and Northpoint executed a "And [sic] Security Agreement (Name Change)" (the "**Name Change**") retroactively amending Al's Loan Agreement to reflect the name change to make Al's the party liable to Northpoint under the Loan and Security Agreement.  (Layton Decl. ¶ 12) All references to the Al's Loan Agreement above include the Name Change.

Page 5 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

October 11, 2017 (the "**Sutherlin Loan Agreement**"). (Layton Decl. ¶ 42);

- Northpoint, Reality, and Al's are parties to an "Addendum to Loan and Security Agreement (Joinder)" ("**Reality Addendum**") dated October 31, 2019, pursuant to which (among other things) Reality became an Additional Borrower under the Al's Loan Agreement, and became jointly and severally liable to Northpoint for all of Reality's and all of Al's debts and obligations to Northpoint. (Layton Decl. ¶ 13) The Al's Loan Agreement and the Reality Addendum are referred to collectively herein as the "**Reality Loan Agreement**."[3]

The Al's Loan Agreement, the Sutherlin Loan Agreement, and the Reality Loan Agreement

are Exhibits 1, 2, 3 and 13 to the Layton Declaration and are referred to collectively herein as the

"**Loan and Security Agreements**."

The Loan and Security Agreements set forth the following relevant duties and obligations

among the parties:

- Loans: From time to time Northpoint may advance loans to the Borrower Defendants for acquisition and financing of Inventory (Section 1);

- Payment: Upon selling an item of Inventory, the Borrower Defendants shall pay Northpoint the unpaid Invoice Cost plus applicable interest and fees (Section 2);

- Invoice Cost: The amount of the Loan for an item of Inventory shall be deemed to be the original invoice cost of the item of Inventory on the applicable Schedule (Section 2);

---

[3] The Reality Addendum states that Reality is a "Borrower" for all purposes under the Al's Loan Agreement. As a "Borrower" under the Al's Loan Agreement, Reality, among other things, (a) is jointly and severally liable to Northpoint for all of Reality's and all of Al's debts and obligations to Northpoint; and (b) pledged the Reality Collateral to secure all of Reality's and all of Al's debts and obligations to Northpoint. Al's debts and obligations to Northpoint include Al's direct debts and obligations under the Al's Loan Agreement, and Al's debts and obligations under the Al's Sutherlin Guaranty, discussed *infra*. In addition, when Reality became a Borrower under the Al's Loan Agreement and became indebted to Northpoint under the Al's Loan Agreement, all of Al's Collateral became collateral for all of Reality's debts and obligations to Northpoint. As a result, all of Reality's Collateral secures all of both Reality's and Al's debts to Northpoint, and all of Al's Collateral secures all of both Al's and Reality's debts and obligations to Northpoint. (Layton Decl. ¶ 14)

Page 6 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

- <u>Collateral:</u> The Borrower Defendants obligations to Northpoint are secured by the Borrower Defendants' personal and fixture property of every kind and nature whenever owned or acquired, including without limitation, all goods, inventory, equipment, general intangibles, documents, accounts, deposit accounts, and proceeds of any and all of the foregoing (Section 3);

- <u>Sale Proceeds Held in Trust and Subject to Immediate Transfer to Northpoint:</u> Unless specifically agreed in writing, the Borrower Defendants hold all proceeds of any sale of Inventory in trust and shall immediately remit the unpaid Invoice Cost to Northpoint (Section 3);

- <u>Insurance:</u> The Borrower Defendants shall continuously maintain "all risk" property insurance covering each item of Northpoint's Collateral for the full replacement value (Section 3);

- <u>Default:</u> Specific events of default, including the Borrower Defendants' breach or failure to perform any obligations under the Loan and Security Agreements, and "any sale or other disposition of the Inventory … other than in compliance with Section 3 of this Agreement [describing the Borrower Defendants' trust obligations]" (Section 6);

- <u>Acceleration:</u> Upon the Borrower Defendants' default, and at Northpoint's election, all the Borrower Defendants' debts are immediately due and payable to Northpoint (Section 7);

- <u>Right of Immediate and Exclusive Possession and Replevin:</u> Upon the Borrower Defendants' default, the Borrower Defendants waive all rights to possession of Northpoint's Collateral and Northpoint shall have the right to immediately enter and remove Northpoint's Collateral: "Borrower agrees that Lender may, by itself or through an agent, without notice to any person and without judicial process of any kind, enter into any premises or upon any land owned, leased or otherwise under the apparent control of Borrower where Lender believes the Collateral may be, and disassemble, render unusable and/or repossess all or any items of the Collateral. Borrower expressly waives all rights to possession of the Collateral after default and all claims for injuries suffered through or loss caused by entering and/or repossession by Lender. Borrower shall, upon demand by Lender, assemble the Collateral and return it to Lender at a place designated by Lender," (Section 7).

Page 7 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

**The Al's Sutherlin Guaranty**[4]

In addition to its obligations under the Al's Loan Agreement, and as part of the consideration for Northpoint to extend financing to Sutherlin, on October 11, 2017 Al's executed and delivered to Northpoint a Guaranty under which Al's guaranteed all of Sutherlin's debts and obligations to Northpoint (the "**Al's Sutherlin Guaranty**"). (Layton Decl. ¶ 16) As a result of the Al's Sutherlin Guaranty, Al's collateral that secured Al's and Reality's debts and obligations to Northpoint, now also secures Sutherlin's debts and obligations to Northpoint.

**II.     Northpoint perfected its security interests in Northpoint's Collateral.**

Northpoint perfected its security interests in Northpoint's Collateral by timely UCC filings with the Oregon Secretary of State. (Layton Decl. ¶ 18, 32, 45)

**III.    Northpoint loaned substantial sums to the Borrower Defendants pursuant to the Loan and Security Agreements, allowing the Borrower Defendants to purchase Inventory for their dealerships.**

Pursuant to the Loan and Security Agreements, Northpoint advanced more than $6,368,000 of Loans to Al's, Sutherlin, and Reality for acquiring and financing Inventory for the Borrower Defendants' dealerships. (Molyneux Decl., ¶ 7; Layton Decl. ¶¶ 15, 31, 43)

**IV.    The Borrower Defendants breached the Loan and Security Agreements by selling Inventory out of trust, failing to remit payment of the Invoice Cost to Northpoint, and allowing insurance to lapse.**

Beginning as early as March 2020 (and possibly before that), the Borrower Defendants each breached material obligations under the Loan and Security Agreements.

---

[4] The individual Defendants and several entity defendants also guaranteed Al's, Sutherlin's, and Reality's debts to Northpoint pursuant to unsecured guarantees that are not the subject of these Motions.

Page 8 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

A.    **The Borrower Defendants failed to remit payment of Invoice Costs to Northpoint, breaching Section 2(a) of the Loan and Security Agreements.**

In order to protect Northpoint's Collateral, Northpoint's agents regularly conduct physical walkthrough inspections and inventory counts at the Borrower Defendants' dealership locations. On multiple occasions in March and April, 2020, those inspections identified trailers and other inventory items that are part of Northpoint's Collateral that were not on the Borrower Defendants' lots, were unaccounted for, and as to which the Borrower Defendants failed to remit payment to Northpoint of the Invoice Cost.

1.    **Northpoint's inspections of Al's Dealership revealed missing, unpaid inventory Collateral.**

March 20 Inspection: On March 20, 2020, Northpoint's agents conducted a walkthrough inspection of Al's Salem, Oregon location (the "**Al's Dealership**"). (Palmer Decl. ¶ 3) This walkthrough revealed three (3) inventory items missing and marked sold: a Forest River Model CKT17BH (serial no. 0914); a Thor Industries Model ID2575RK (serial no. 7074); and a Travel Lite Rayzr Fb (serial no. 6308). (Palmer Decl. ¶ 4) Northpoint later confirmed that Al's paid the Invoice Cost of the Travel Lite Rayzr Fb online, but that the remaining two (2) inventory items are unaccounted for and unpaid: (i) Forest River Model CKT17BH (serial no. 0914); and (ii) Thor Industries Model ID2575RK (serial no. 7074).  (Molyneux Decl., ¶ 19) The total amount not paid to Northpoint for these two (2) inventory items is $28,615.33. (*see* Layton Decl., ¶ 24, Exhibit 8)

April 7 Inspection: On April 7, 2020, Northpoint's agents again conducted a walkthrough inspection of the Al's Dealership. (Palmer Decl. ¶¶ 6-7) This walkthrough revealed one (1) additional inventory item missing and marked sold. (Palmer Decl. ¶ 7) Northpoint, later confirmed that this inventory item is unaccounted for and unpaid: (iii) Forest River Model S1A360DL (serial

Page 9 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

no. 7768).  (Molyneux Decl., ¶ 25) The amount not paid to Northpoint for this inventory item is $117,366.96. (*see* Layton Decl., ¶ 24, Exhibit 8)

April 20 Inspection: On April 20, 2020, Northpoint's agents again conducted a walkthrough inspection of the Al's Dealership. (Palmer Decl. ¶¶ 9-10) This walkthrough revealed one (1) additional inventory item missing and marked sold. (Palmer Decl. ¶ 10) Northpoint, later confirmed that this inventory item is unaccounted for and unpaid: (iv) Travel Lite Model EVOKE B 2020 (serial no. 3915).  (Molyneux Decl., ¶ 31) The amount not paid to Northpoint for this inventory item is $27,375.00. (*see* Layton Decl., ¶ 24, Exhibit 8)

In sum, four (4) items of Northpoint's Al's Collateral are missing from the Al's Dealership. Al's sold these inventory items out of trust and Al's did not pay Northpoint the Invoice Cost totaling $173,357.29 (the "**Al's Trust Funds**"). (Layton Decl., ¶ 24, Exhibit 8)

### 2. Northpoint's inspections of Reality's Dealership revealed missing, unpaid inventory Collateral.

March 20 Inspection: On March 20, 2020, Northpoint's agents conducted a walkthrough inspection of Reality's Salem, Oregon location (the "**Reality Dealership**"). (Palmer Decl. ¶¶ 3-4) This walkthrough revealed one (1) inventory item missing and marked sold. (Palmer Decl. ¶ 5) Northpoint, later confirmed that this inventory item is unaccounted for and unpaid: (i) Grand Design RV Model 350G (serial no. 6372). (Molyneux Decl., ¶ 20). The amount not paid to Northpoint for this inventory item is $60,380.00. (*see* Layton Decl., ¶ 38, Exhibit 12)

In sum, one (1) item of Northpoint's Reality Collateral is missing from the Reality Dealership. Reality sold this inventory item out of trust and Reality did not pay Northpoint the Invoice Cost totaling $60,380.00 (the "**Reality Trust Fund**s"). (Layton Decl., ¶ 38, Exhibit 12)

**SUSSMAN SHANK LLP, ATTORNEYS AT LAW**
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

**3.    Northpoint's inspections of Sutherlin's Dealership revealed missing, unpaid inventory Collateral.**

<u>March 20 Inspection:</u> On March 20, 2020, Northpoint's agent conducted a walkthrough inspection of Sutherlin's Sutherlin, Oregon location (the "**Sutherlin Dealership**"). (Waters Decl. ¶ 3) This walkthrough revealed two (2) inventory items missing and marked sold. (Waters Decl. ¶ 5) Northpoint, later confirmed that these inventory items are unaccounted for and unpaid: (i) Forest River Model CKT264CK-OR (serial no. 2044); (ii) Thor Industries Model 271 SPRING (serial no. 4624).  (Molyneux Decl., ¶ 21) The total amount not paid to Northpoint for these two (2) inventory items is $37,717.24. (*see* Layton Decl., ¶ 50, Exhibit 17)

<u>April 13 Inspection:</u> On April 13, 2020, Northpoint's agent again conducted a walkthrough inspection of the Sutherlin Dealership. (Waters Decl. ¶ 6) This walkthrough revealed one (1) additional inventory item missing and marked sold:  Forest River Model SCT271GSL R-C (serial no. 0520). (Waters Decl. ¶ 7) Northpoint, later confirmed that the Invoice Cost of this inventory item was paid on April 15.  (Molyneux Decl., ¶ 30)

Additionally, Sutherlin has failed to pay Northpoint the Invoice Cost of one (1) inventory item allegedly stolen and submitted to insurance by Sutherlin in August 2019: (iii) Forest River T23MK (serial no. 1489). (Layton Decl. ¶ 50) The total amount not paid to Northpoint for these one (1) inventory item is $15,561.00. (*see* Layton Decl., ¶ 50, Exhibit 17)

In sum, three (3) items of Northpoint's Sutherlin Collateral are missing from the Sutherlin Dealership. Sutherlin sold these inventory items out of trust and Sutherlin did not pay Northpoint the Invoice Cost totaling $53,278.24. (the "**Sutherlin Trust Funds**"). (Layton Decl., ¶ 50, Exhibit 17)

Page 11 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

**B.** **The Borrower Defendants allowed required insurance to be cancelled, breaching Section 3 of the Lease and Security Agreements.**

Al's, Sutherlin's, and Reality's assets are insured under the same insurance policy with Sentry Select Insurance Company ("Sentry"). (Molyneux Decl., ¶ 10) Northpoint is an additional insured under the policy. (Molyneux Decl., ¶ 10) On February 28 2020, Northpoint received notice from Sentry that the insurance coverage for Al's, Reality and Sutherlin would be cancelled, effective April 5, 2020. (Molyneux Decl., ¶ 10)[5] Upon receiving this notice, Mr. Molyneux contacted Jamie McGowen, President of Al's, Sutherlin, and Reality, informed her that the cancelled coverage was a serious breach of the Loan and Security Agreements, and demanded proof of reinstatement. (Molyneux Decl., ¶¶ 10-11) Despite Northpoint's demand, and multiple follow-up demands, Northpoint, as an additional insured, has not received notice that the cancellation is rescinded or that the Borrower Defendants have reinstated coverage. (Layton Decl. ¶¶ 56-58)

**V.** **When Northpoint confronted the Borrower Defendants regarding the missing Northpoint Collateral and withheld Invoice Cost payments from Northpoint, the Borrower Defendants admitted to severe financial distress and admitted using the Invoice Cost proceeds to pay other debts.**

Since January 2020, Northpoint has experienced serious problems collecting payments from the Borrower Defendants, including multiple payments returned for "not sufficient funds" ("**NSF**"). (Molyneux Decl., ¶ 9) Additionally, upon selling inventory Collateral, the Borrower Defendants have regularly delayed Invoice Cost payments to Northpoint. (*see* Molyneux Decl., ¶

---

[5] A copy of the Cancellation Notice and underlying policy documents is attached as Exhibit 7a to the Layton Declaration (the "**Insurance Cancellation**"). (Layton Decl. ¶ 54)

Page 12 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

16) These delays have resulted in multiple written and verbal communications from Northpoint to the Borrower Defendants attempting to collect. (*see* Molyneux Decl., ¶ 9, 12-16) The Borrower Defendants' responses to Northpoint's inquiries reveal that the Borrower Defendants are in severe financial distress, are insolvent (in that they cannot pay their debts as they come due), and have repeatedly wrongly withheld, and continue to withhold payments from various creditors (including Northpoint) in violation of trust agreements.

March 5, 2020: On March 5, 2020, Mr. Molyneux received a telephone call from Sadia Syed, one of the Borrower Defendants' personal guarantors. (Molyneux Decl., ¶ 12) On that call, Ms. Syed informed Mr. Molyneux that in addition to owing Northpoint approximately $45,000 from unpaid inventory sales out of trust, the Borrower Defendants owed an additional $200,000 to $250,000 from unpaid inventory sales out of trust to Wells Fargo, another secured creditor that financed inventory for the Borrower Defendants. Mr. Molyneux immediately memorialized this conversation in a March 5 email. (Molyneux Decl., ¶ 12) A copy of Mr. Molyneux's March 5 email is appended as Exhibit 36 to the Molyneux Declaration.

March 5, 2020: On March 5, 2020, Jamie McGowen, the Borrower Defendants' President and also one of the Borrower Defendants personal guarantors, emailed Mr. Molyneux stating that she "had someone interested in coming in to take over," and that "[t]hese people would come in and payoff [sic] Wells Fargo and Northpoint," but also indicated that the buyers' "letter of intent" was delayed. (Molyneux Decl. ¶ 13) A copy of Ms. McGowen's March 5 email is appended as Exhibit 36a to the Molyneux Declaration.

March 9, 2020: On March 9, 2020, Mr. Molyneux spoke again with Ms. Syed. In this conversation Ms. Syed informed Mr. Molyneux that she believed the Borrower Defendants' sales

Page 13 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

out of trust debt to Wells Fargo had grown to approximately $375,000 and that the Borrower Defendants total out of trust debt was approximately $500,000 to $550,000. Mr. Molyneux immediately memorialized this conversation in a March 9 email. (Molyneux Decl., ¶ 15) A copy of Mr. Molyneux's March 9 email is appended as Exhibit 38 to the Molyneux Declaration.

March 11, 2020: On or around March 11, 2020, in the ordinary course of its business, Northpoint received a copy of a letter from Keystone RV Company to Reality, stating that Reality is inaccurately holding itself out as an authorized dealer for Keystone RV Company and Dutchmen Manufacturing and should immediately stop representing itself as an authorized dealer for Keystone and Dutchmen at any location. (Molyneux Decl., ¶ 18) A copy of the Keystone RV Company March 11 Letter is appended as Exhibit 41 to the Molyneux Declaration.

March 20, 2020: On March 20, 2020, Mr. Molyneux emailed Ms. McGowen and Ms. Syed inquiring about the inventory items discovered missing at the March 20 Al's and Reality Dealership Inspections, described above. On March 23, Ms. McGowan responded stating that she "had to shut down the dealerships due to the Coronavirus":

> Richard,
>
> I have had to shut down the dealerships due to the Coronavirus. So, there is literally nothing coming in. I'm sure that you can understand that if the last several ACH withdrawals didn't clear than the current ones won't either. You can continue to true to bleed us dry if that is what you choose to do.
>
> We are literally in the middle of a global crisis (that includes NORTHPOINT). So, you can continue on the path you are on if that's your choice.
>
> Jamie.

(Molyneux Decl., ¶ 22) A copy of Ms. McGowen's March 23 email is appended as Exhibit 42 to the Molyneux Declaration.

Page 14 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

March 25, 2020: On March 25, 2020, Mr. Molyneux emailed Ms. Syed informing her of

two additional NSF payments. Ms. Syed responded saying that she had lost "contact with Jamie":

> Hi Richard I am in Louisiana and we have shut down going on here due to
> corona, I don't have any contact with Jamie at this time, last I heard from her
> was she shut down the dealerships due to corona issue as well, I will try
> reaching out to her and give you a call after I speak to her, thanks

(Molyneux Decl., ¶ 23) A copy of Ms. Syed's March 25 email is appended as Exhibit 43 to the

Molyneux Declaration.

April 8, 2020: On April 8, 2020, Mr. Molyneux emailed Ms. Syed inquiring about another

missing item of inventory, explaining that Ms. McGowen was nonresponsive, and requesting Ms.

Syed's assistance "to resolve this." Ms. Syed responded:

> I understand that but I have no control over Jamie, she is not responding to me
> either, so I can [sic] say anything on her behalf, she should be responsible for
> all the costs, I will have to go into a legal battle against her at that point as
> well,

(Molyneux Decl., ¶ 26) A copy of Ms. Syed's March 25 email is appended as Exhibit 45 to the

Molyneux Declaration.

April 8, 2020: On April 8, 2020, after receiving Ms. Syed's email, Ms. McGowen copied

Mr. Molyneux on an email she sent to Ms. Syed.  In that email, Ms. McGowen admitted that the

"financial situation has only deteriorated" and that she had applied for "Federal Funding," and

admitted that the Borrower Defendants were using sold out of trust funds (Northpoint's Collateral

required to be held in trust) to "pay off other units as well as operating expenses and payroll":

> Sadia,
>
> I spoke to Teresa and she told me that that unit delivered to the customer two
> weeks ago. **I'm sure that the funds were used to pay off other units as well
> as operating expenses and payroll,** Which I still had to cover an almost full
> payroll just 3 days ago. I feel like a broken record sometimes when speaking

Page 15 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO
SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER
FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

to you guys or to Richard. The financial situation has only deteriorated since my email to Richard on March 23rd. If you go back to the email that I sent on the 23rd you will see that I was very clear on the situation and we all know that based on the current state of the country everyone will be relying on Federal funding to help.

I have done my due diligence applying for Federal funding. I have submitted my application and uploaded all necessary documents to the bank. **If that funding comes through then I will have the funds to pay the SOT's immediately**. I have explained the situation to Richard numerous times and it remains the same every time I communicate with him. He wants me to pull a Rabbit out of my hat, I am unfortunately not a magician. As of now the Rabbit will appear as Federal Funding from the US Government.

I will keep everyone including Richard updated on the Federal Funding as soon as I know anything further.

Stay Safe and Stay healthy.

Thanks

Jamie

(emphasis added)[6]

(Molyneux Decl., ¶ 27) Mr. Molyneux immediately responded, stating that "[c]ontinuing to sell our inventory out of trust is not an option" for Northpoint, and requesting "to pick up our inventory." (Molyneux Decl., ¶ 28) A copy of Ms. McGowen's and Mr. Molyneux's April 8 correspondence is appended as Exhibits 46 and 47 to the Molyneux Declaration.

On April 21, 2020, Mr. Layton emailed Ms. McGowen regarding two additional items of inventory Collateral that were sold but for which Northpoint had not received payment. Ms. McGowen responded stating she was going to see an attorney. (Layton Decl., ¶¶ 59-60)

---

[6] It is important to note that under the Paycheck Protection Program and Health Care Enhancement Act, Pub. L. 116–139 ("**PPP Act**"), funds can only be used to pay payroll, payroll taxes, benefits, rents, and utilities. The funds cannot be used to pay creditors.

Page 16 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

**VI.    The Borrower Defendants have ignored Northpoint's demands to surrender Northpoint's Collateral and failed to pay accelerated amounts due under the Loan and Security Agreements.**

In light of the Borrower Defendants' documented breaches of the Loan and Security Agreements and financial distress, Northpoint made multiple written demands that the Borrower Defendants relinquish and return Northpoint's Collateral. Most recently, by letters dated April 22, 2020, Northpoint notified the Borrower Defendants that due to their defaults, Northpoint had terminated their credit facilities and accelerated the maturity of all amounts owed under the Loan and Security Agreements. (Layton Decl. ¶ 61) Northpoint demanded payment of all amounts due to Northpoint, and that the Borrower Defendants' make Northpoint's Collateral available for repossession and return to Northpoint. (Layton Decl. ¶ 61) Despite repeated written and verbal demands, the Borrower Defendants have failed to pay the Debt or surrender the Inventory Collateral. (Layton Decl. ¶ 66; Molyneux Decl. ¶ 33)

Lists of the Inventory Collateral remaining in the Borrower Defendants' possession and control as of May 8, 2020 are attached as Exhibits 7, 11, and 16 to the Layton Declaration. (Layton Decl. ¶¶ 23, 37, 49)

As of May 8, 2020, the total principal amounts due from the Borrower Defendants to Northpoint, including Trust Funds, plus interest, costs, attorney fees, and other amounts provided for the Loan and Security Agreements is as follows:

- Al's: $1,991,924.52, of which $287,015.53 are trust funds  (the "**Al's Debt**"). (Layton Decl. 25)

- Reality: $1,991,924.52, of which $287,015.53 are trust funds  (the "**Reality Debt**"). (Layton Decl. ¶ 40)

- Sutherlin: $497,736.43, of which $53,278.24 are trust funds  (the "**Sutherlin Debt**"). (Layton Decl. ¶¶ 49-15, Exhibits 16-17)

Page 17 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

**MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A
PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

**VII.    Introduction.**

Pursuant to Federal Rule Civil Procedure 65, Northpoint moves for a temporary restraining order and order to show cause why a preliminary injunction should not issue against the Borrower Defendants.  In support of the Motion, Northpoint relies on the Declarations of Brent Layton, Richard Molyneux, Robert Palmer, and Wesley Waters, and exhibits attached thereto; the Memorandum of Points and Authorities; and the remaining pleadings and files herein, including the Complaint and attached exhibits.

Immediate relief is appropriate in this case in light of the strong likelihood of success on Northpoint's claims, the existence of irreparable injury if such relief is not issued, and the complete absence of any irreparable injury or other hardship to the Borrower Defendants if the relief is granted.

The Borrower Defendants are RV dealerships, which have sold Northpoint's Collateral out of trust and refused to grant access to Northpoint to retrieve Northpoint's Collateral. The Borrower Defendants have allowed insurance policies covering Northpoint's Collateral to be cancelled, the Borrower Defendants' dealership stores are shut, and Northpoint's Collateral remains subject to theft, damage, vandalism, and general commercial depreciation as it sits on the Borrower Defendants' lots.

//

//

//

Page 18 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

## VIII.   Argument.

### A.   Northpoint is Entitled to a Temporary Restraining Order and Preliminary Injunction.

#### 1.   Standard for Temporary Restraining Order and Preliminary Injunction.

The legal standards for entry of either a temporary restraining order or preliminary injunction are the same. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a temporary restraining order or preliminary injunction, the plaintiff must "establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Perfect JO, Inc. v. Google, Inc.*, 653 F.3d 976, 980 (9th Cir. 2011).

The Ninth Circuit Court of Appeals has articulated another version of the *Winter* test, providing that a preliminary injunction may issue where "serious questions going to the merits were raised and the balance of hardships tips sharply in the [plaintiff's] favor." *Vanguard Outdoor, LLC v. City of Los Angeles*, 648 F.3d 737, 739-40 (9th Cir. 2011). Therefore, if the moving party raises serious questions concerning the merits (as opposed to a likelihood of success) and the hardship balance tips sharply in the moving party's favor, an injunction can issue so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest. *Id*. at 740. Under either version of the test, the Ninth Circuit endorses a "sliding scale" approach in which "the elements of the preliminary injunction test are balanced, so that a stronger showing

Page 19 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

of one element may offset a weaker showing of another." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012).

### 2.    Northpoint is Likely to Succeed on the Merits.

To obtain a temporary restraining order or preliminary injunction, a plaintiff must show a likelihood of prevailing on the merits. *Wilson v. Watt*, 703 F.2d 395, 399 (9th Cir. 1983). However, a plaintiff need not show how it will positively prevail on the merits. *Gilder v. P.G.A. Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991). A reasonable probability--"fair chance" of success--is the standard for granting preliminary injunctive relief. *Berda v. Grand Lodge of IAM*, 584 F.2d 308, 315 (9th Cir. 1978); *McCormick v. Claytor*, 441 F. Supp. 622 (D. Or. 1977).

Northpoint's evidence demonstrates has a very strong likelihood of prevailing on the merits of its claims of breach of the Lease and Security Agreements and conversion of Northpoint's Collateral. Unquestionably Northpoint, at a minimum, can show a "fair chance" of success on the merits of these claims.

### a.    Breach of the Loan and Security Agreements

The Loan and Security Agreements are governed by Georgia law. "In Georgia, the essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015) (quotation marks and alterations omitted). Among other remedies, Georgia law provides that "once default has occurred, a secured creditor is authorized to take or retain possession of the collateral." *Okefenokee Aircraft, Inc. v. PrimeSouth Bank*, 676 S.E.2d 394, 396 (Ga. Ct. App. 2009) (citing OCGA § 11–9–609(a)(1)).

As detailed above, the Borrower Defendants have breached their obligations under the

Page 20 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

Loan and Security Agreements by, at minimum selling inventory Collateral and failing to remit the Invoice Cost of each item of inventory to Northpoint; selling inventory Collateral out of trust; and allowing insurance policies covering inventory Collateral to be cancelled. Northpoint has notified the Borrower Defendants of their defaults, and demanded payment and return of Northpoint's Collateral, which demands have been ignored. Northpoint has unquestionably been damaged as a result of the Borrower Defendants' failure to pay Invoice Cost of the inventory Collateral it has sold out of trust and failure to pay Northpoint the accelerated balances due.

b.    **Conversion.**

In Georgia, the tort of conversion applicable to secured creditors is as follows:

> A secured creditor has a right of action for conversion if property subject to its security interest is disposed of without the creditor's authorization. The elements of such a claim include the showing of a valid security interest in the debtor's property, disposition of that property, absence of the creditor's authorization for the disposition, and resulting damage to the creditor.

*Bearoff v. Craton*, 830 S.E.2d 362, 376 (Ga. Ct. App. 2019) (quoting *All Bus. Corp. v. Choi*, 634 S.E.2d 400, 403 (Ga. Ct. App. 2006)). "[A] a secured creditor need not have foreclosed its interest to maintain an action for conversion of Northpoint's Collateral." *William Goldberg & Co. v. Cohen*, 466 S.E.2d 872, 883 (Ga. Ct. App. 1995).

Similarly, under Oregon law, "A secured creditor with the right to possession of the collateral after default may maintain an action for conversion against one who has exercised unauthorized acts of dominion over the property to the exclusion of the creditor's rights." *Oregon Bank v. Fox*, 699 P.2d 1147, 1149 (Or. Ct. App. 1985).

Here, the evidence shows that the Northpoint holds valid security interests in Northpoint's Collateral. The Borrower Defendants disposed of some of that inventory Collateral (Northpoint's

Page 21 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

Collateral) by selling it out of trust and failing and refusing to remit to Northpoint the full amount of the Invoice Cost they agreed to hold in trust for Northpoint's benefit and to remit to Northpoint. Instead, as Ms. McGowen admitted in her April 8, 2020 email to Ms. Syed, copied to Mr. Molyneux at Northpoint, the Borrower Defendants used the inventory proceeds to pay operating expenses. Northpoint suffered damages as a result of the Borrower Defendants' tortious use of Invoice Cost proceeds to pay their operating expenses instead of paying Northpoint. Based on this evidence, Northpoint is highly likely to succeed on its conversion claim.

### 3. Northpoint Will Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief.

The Borrower Defendants have breached the Lease and Security Agreements, converted Northpoint's Collateral, sold Northpoint's Collateral out of trust, and failed and refused to remit to Northpoint the full amount of the Invoice Cost they were required to hold in trust for Northpoint's benefit. The Borrower Defendants admit to using these proceeds for payroll and other expenses, further hindering Northpoint's rights. Additionally, the Borrower Defendants have refused Northpoint's demands to return Northpoint's inventory Collateral and allowed required insurance policies to get cancelled, risking Northpoint's Collateral even further.

"Economic harm is not normally considered irreparable." *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2716 (2019). But where the plaintiff is unlikely to recover monetary damages flowing from its injury, economic harm can be irreparable. *Id.*; *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1280 (9th Cir. 2020); *see also Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205 (3d Cir. 1990) ("[T]he possibility of an unsatisfied money judgment … [may] constitute irreparable injury for purposes of granting a preliminary injunction."

Page 22 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

(citing authorities; emphasis added)). Relevant here, economic harm is irreparable where "the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994). Evidence that the defendant is selling inventory out of trust and wrongfully possessing and dissipating a secured creditor's collateral is commonly accepted proof of irreparable harm. *E.g.*, *Fid. Nat. Title Ins. Co. v. Castle*, No. C 11-00896 SI, 2011 WL 5882878, at *6 (N.D. Cal. Nov. 23, 2011) (defendant's pattern of selling plaintiff's collateral and dissipating sales proceeds established likelihood of recurrence and irreparable harm (discussing authorities)).

Here, there is no doubt Northpoint will suffer irreparable harm absent immediate injunctive relief allowing Northpoint to repossess Northpoint's Collateral. The Borrower Defendants have willfully engaged in a pattern of selling Northpoint's Collateral out of trust and refusing to remit Invoice Costs to Northpoint. Despite Northpoint's repeated inquiries regarding missing inventory and demands for payment and return of Northpoint's Collateral, the Borrower Defendants have continued their blatantly tortious conduct, selling items out of trust throughout April 2020, especially *after* Northpoint's Mr. Molyneux unequivocally informed Ms. McGowen that "[c]ontinuing to sell our inventory out of trust is not an option," and requested "to pick up our inventory." (Molyneux Decl., ¶ 28).

Ms. McGowen *admits* that the Borrower Defendants are insolvent because they cannot pay their debts as they come due. She further admits that the Borrower Defendants have diverted Northpoint's Collateral and Invoice Cost proceeds "to pay off other units as well as operating expenses and payroll". (Molyneux Decl., ¶ 27) Further, the Borrower Defendants are likely to

Page 23 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

continue their improper conduct, particularly because they have already disregarded Northpoint's demand to stop selling inventory Collateral out of trust, and because the Borrower Defendants' last ditch strategy to address their insurmountable financial problems—federal PPP Act funding—*cannot* be used as they propose, *i.e.*, to pay off their creditors.

Under the Loan and Security Agreements and applicable law, Northpoint is entitled to immediate access to Northpoint's Collateral to preserve what value remains.  Northpoint's evidence is more than sufficient to establish the likelihood of irreparable injury and the need for injunctive relief. *E.g.*, *Fid. Nat. Title Ins. Co.*, 2011 WL 5882878, at *6; *see also, e.g.*, *Hartford Cas. Ins. Co. v. Intrastate Constr. Corp.*, No. 10-61064-CIV, 2015 WL 13390523, at *13 (S.D. Fla. Apr. 13, 2015) ("The dissipation of the $239,000.00 in cash proceeds from the sale of the Davie Property, plus the existence of other real property being held in the Land Trust under the Indemnitors' control, is more than sufficient to show the irreparable injury that Hartford may suffer without the imposition of a preliminary injunction on its FUFTA claims."); *Am. Trade Partners, L.P. v. A-1 Int'l Importing Enterprises, Ltd.*, 757 F. Supp. 559, 576 (E.D. Pa. 1991) (same: "ATP will suffer irreparable injury if A–1, Premier, Jack Cassidy, Kevin Cassidy, Restivo, and Santangelo are permitted to convert, dissipate, and disburse assets that defendants were legally obligated to hold in trust for the benefit of ATP).[7]

---

[7] *See also*, *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (defendant CEO's prior conduct of "convinc[ing] his fellow directors and trustees to consent to diverting nearly $35 million from the [Employee Stock Ownership Plan] into his personal bank account" established a likelihood of dissipation); *In re Focus Media Inc.*, 387 F.3d 1077, 1086 (9th Cir. 2004) ("specter of irreparable harm" established in part because of "evidence in the record that in the past [the defendant] made away with [the bankrupt company's] funds"); *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003) (likelihood of dissipation and irreparable harm established upon defendants' "history of fraudulent intra-family transfers, their

Page 24 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

**4.     The Balance of Equities Tips Sharply in Northpoint's Favor.**

In deciding whether to grant a temporary restraining order or a preliminary injunction, the Court has a duty to balance the interests of both parties and weigh the potential damage to each. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931 (1975).  If the plaintiff demonstrates a likelihood of success on the merits and the existence of irreparable harm, then the plaintiff has shifted the balance of equities in the plaintiff's favor.  *Allstate Ins. Co. v. Rote*, No. 3:16-cv-01432-HZ, 2016 WL 4191015, at *5 (D. Or. Aug. 7, 2016).

Here, the balance of hardships weighs entirely in Northpoint's favor.  Northpoint has established its likelihood of success and irreparable injury it is all but certain to suffer if injunctive relief is not granted.  This is all that is required to tip the balance of the hardship in Northpoint's favor. *See id.*

With respect to the Borrower Defendants selling Northpoint's Collateral out of trust, the balancing test involves weighing the harm Northpoint may suffer if an injunction is not granted against the harm, if any, that the Borrower Defendants may suffer if the injunction is granted. Based on the evidence, this balancing test weighs entirely in favor of Northpoint as well.

On the contrary, it is difficult to ascertain any harm that the Borrower Defendants would

---

refusal to disclose asset information in defiance of court order and their convenient divorce settlement"); *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1236–37 (9th Cir. 1999) (likelihood of dissipation and irreparable harm established upon defendants' "history of spiriting their commissions away to a Cook Islands trust, which was intentionally designed to frustrate United States courts' powers to grant effective relief to prevailing parties"); *Hilao*, 25 F.3d at 1480 (likelihood of dissipation and irreparable harm when, among other things, "federal courts ha[d] twice enjoined [relatives of the defendant estate] from transferring or secreting assets, based on a pattern and practice of secreting assets through foreign bank accounts by the use of aliases and shell corporations").

Page 25 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

suffer if the Court entered an order granting Northpoint access to the Borrower Defendants' dealership lots to recover Northpoint's Collateral. Having breached the Loan and Security Agreements and refused Northpoint's demands, the Borrower Defendants do not have any legal right to retain Northpoint's Collateral, or any ownership, title, property, or possession rights in Northpoint's Collateral. As a result, the Borrower Defendants will not suffer any hardship by the granting of the relief requested herein.

**5.    A Temporary Restraining Order and Preliminary Injunction Serves the Public Interest.**

A temporary restraining order and preliminary injunction is in the best interests of the public. Where an injunction impacts primarily private interests, the public interest factor does not weigh heavily. *Ocean Beauty Seafoods, LLC v. Pac. Seafood Grp. Acquisition Co*., 648 F. App'x 709, 711-12 (9th Cir. 2016). In this case, any public interest tips in favor of Northpoint, as the public interest favors protection of personal property, which is threatened in this case.

Northpoint is entitled to a temporary restraining order and preliminary injunction.

**MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION FOR PROVISIONAL PROCESS OF CLAIM AND DELIVERY OR REPLEVIN**

**I.    Introduction.**

Northpoint also seeks provisional process in the form of claim and delivery or replevin (the "Replevin Motion"). The Borrower Defendants' default entitles Northpoint to immediate and exclusive possession of Northpoint's Collateral. *Okefenokee Aircraft, Inc. v. PrimeSouth Bank*, 676 S.E.2d 394, 396 (Ga. Ct. App. 2009) (citing OCGA § 11–9–609(a)(1)); *Oregon Bank v. Fox*, 699 P.2d 1147, 1149 (Or. Ct. App. 1985). Yet, despite repeated demands, the Borrower Defendants refuse to grant Northpoint access to their retail dealership lots to allow Northpoint to recover

Page 26 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

Northpoint's Collateral; instead, Defendants are retaining wrongful and exclusive possession and control over Northpoint's Collateral.

Northpoint has a right to immediate and exclusive possession of Northpoint's Collateral. In support of the Replevin Motion, Northpoint relies on the Declarations of Brent Layton, Richard Molyneux, Robert Palmer, and Wesley Waters, and exhibits attached thereto; the Memorandum of Points and Authorities; and the remaining pleadings and files herein, including the Complaint and attached exhibits.

## II.    Argument.

### A.    Northpoint is Entitled to the Provisional Relief of Claim and Delivery or Replevin.

#### 1.    Standard for the Provisional Relief of Claim and Delivery or Replevin.

"At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). This includes claim and delivery or replevin. *See id.* at 64(b).

The Oregon Rules of Civil Procedure ("ORCP") 83 governs provisional process generally and ORCP 85 governs the specific provisional process remedy of claim and delivery. "In an action to recover possession of personal property, the plaintiff, at any time after the action is commenced and before judgment, may claim the immediate delivery of such property, as provided in Rule 83." ORCP 85A. ORCP 83A sets forth the requirements for issuance of provisional process, including the remedy of claim and delivery. A petitioner must demonstrate that the action is one in which provisional process may issue based on the following factors:

Page 27 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

A(1) The name and [...] place of business of the defendant; A(2) Whether the underlying claim is based on a consumer transaction and whether provisional process in a consumer good is sought; A(3)(a) If the provisional process sought is claim and delivery, a description of the claimed property in particularity sufficient to make possible its identification, and the plaintiff's estimate of the value and location of the property; A(3)(b) If the provisional process sought is a restraining order, [...]; A(4) Whether the plaintiff's claim to provisional process is based upon ownership, entitlement to possession, a security interest or otherwise; A(5) A copy or verbatim recital of any writing or portion of a writing, if plaintiff relies upon a writing, which evidences the origin or source of the plaintiff's claim to provisional process; A(6) Whether the claimed property is wrongfully detained by the defendant or another person; A(7) Whether the claimed property has been taken by public authority for a tax, assessment, or fine; A(8) If the plaintiff claims that the defendant has waived the right to be heard, a copy of the writing evidencing such waiver and a statement of when and in what manner the waiver occurred; A(9) Facts, if any, which tend to establish that there is a substantial danger that the defendant or another person is engaging in, or is about to engage in, conduct which would place the claimed property in danger of destruction, serious harm, concealment, removal from this state, or transfer to an innocent purchaser; A(10) Facts, if any, which tend to establish that without restraint immediate and irreparable injury, damage, or loss will occur; A(11) Facts, if any, which tend to establish that there is substantial danger that the defendant or another person probably would not comply with a temporary restraining order; and A(12) That there is no reasonable probability that the defendant can establish a successful defense to the underlying claim.

ORCP 83A.

"The order of provisional process issued by the court as provided in Rule 83 may require the sheriff of the county where the property claimed may be to take the property from the defendant or another person and deliver it to the plaintiff."  ORCP 85.

## 2.    Northpoint has Satisfied the Requirements for Issuance of Provisional Process under ORCP 83.

Northpoint is entitled to the provisional process remedy of claim and delivery based on each and every one of the factors under ORCP 83A, described above.

- Borrower Defendants are refusing to allow Northpoint to recover Northpoint's

Page 28 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

Collateral from the Borrower Defendants' dealerships in Salem, Woodburn, and Sutherlin, ORCP 83A(1);

- The underlying claim is not based on a consumer transaction or seeking provisional process in a consumer good, ORCP 83A(2);

- The claimed property is Northpoint's inventory Collateral, ORCP 83A(3)(a);

- The provisional process seeks a temporary restraining order requiring the Borrower Defendants' to cooperate with Northpoint by assisting Northpoint in identifying the locations where Northpoint's Collateral is located, providing keys and combinations to locks so that Northpoint can access and recover Northpoint's Collateral, and prohibiting the Borrower Defendants from moving, selling, transferring, damaging, or destroying any of Northpoint's Collateral or otherwise interfering with Northpoint's efforts to recover Northpoint's Collateral, ORCP 83A(3)(b);

- The provisional process is based upon Northpoint's perfected security interest in Northpoint's Collateral and its right to immediate and exclusive possession of Northpoint's Collateral, ORCP 83A(4);

- The source of Northpoint's right to provisional process is Section 7 of the Loan and Security Agreements, which expressly provides that upon default,

  Borrower agrees that **Lender may, by itself or through an agent, without notice to any person and without judicial process of any kind, enter into any premises or upon any land owned, leased or otherwise under the apparent control of Borrower where Lender believes the Collateral may be, and disassemble, render unusable and/or repossess all or any items of the Collateral.** Borrower expressly waives all rights to possession of the Collateral after default and all claims for injuries suffered through or loss caused by entering and/or repossession by Lender. Borrower shall, upon demand by Lender, assemble the Collateral and return it to Lender at a place designated by Lender. (emphasis added)

  ORCP 83A(5);

- Northpoint's Collateral is wrongfully detained by the Borrower Defendants, ORCP 83A(6);

- Northpoint's Collateral has not been taken by public authority for a tax, assessment, or fine, ORCP 83A(7);

- The Borrower Defendants' have waived the right to be heard pursuant to Section

Page 29 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

7 of the Loan and Security Agreements, which provides: "Lender may, by itself or through an agent, **without notice to any person and without judicial process of any kind,** enter into any premises or upon any land owned, leased or otherwise under the apparent control of Borrower where Lender believes the Collateral may be, and disassemble, render unusable and/or repossess all or any items of the Collateral," (emphasis added),ORCP 83A(8);

- The foregoing facts—especially that the Borrower Defendants each failed to pay Northpoint amounts due under the Loan and Security Agreements, allowed required insurance covering Northpoint's Collateral to be cancelled, sold inventory out of trust and failed and refused to pay Northpoint the Invoice Costs, and instead applied the sales proceeds to other debts even *after* Northpoint demanded that they stop—establish that Northpoint's Collateral is at immediate and substantial danger of destruction or loss, ORCP 83A(9); Northpoint will suffer irreparable injury if the Borrower Defendants' are not restrained, ORCP 83A(10); A(11) that the Borrower Defendants are unlikely to comply with a temporary restraining order, ORCP 83A(11); and there is no reasonable probability that the Borrower Defendants can establish a successful defense to Northpoint's claims, ORCP 83A(12).

In sum, Northpoint has established that: (1) Northpoint maintains an immediate and exclusive possessory interest in Northpoint's Collateral, which the Borrower Defendants continue to wrongfully retain; (2) the Borrower Defendants refuse to allow access to their lots to allow Northpoint to remove Northpoint's Collateral; (3) Northpoint sent the Borrower Defendants numerous written demands requesting return of Northpoint's Collateral; (4) the Borrower Defendants have still, to date, not returned Northpoint's Collateral; and (5) Northpoint is suffering damages.

Northpoint's Collateral is at a substantial risk of burglary and vandalism because the Borrower Defendants retail dealership locations are not operating. Upon repossession, Northpoint will be able to eliminate the possibility of diminution in value or loss to Northpoint's Collateral by securing it. There can be no doubt that Northpoint is entitled to and should receive immediate and exclusive possession of Northpoint's Collateral.

Page 30 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

### 3.    Northpoint Should Not be Required to Post a Bond.

Pursuant to ORCP 82A(3), before any property is taken by the sheriff under ORCP 85, the movant must file with the clerk a surety bond or an irrevocable letter of credit issued by an insured institution, as defined in ORS 706.008, in an amount fixed by the court, and to the effect that movant will pay all damages which the non-moving party may sustain by reason of the claim and delivery, if (and only if), the same be wrongful or without sufficient cause.

In this case, the Borrower Defendants cannot dispute that they have no property rights in Northpoint's Collateral. The Loan and Security Agreements themselves establish that the Borrower Defendants' possessory rights are extinguished.  Northpoint is the sole party with an immediate and exclusive possessory interest in Northpoint's Collateral.  Thus, the Borrower Defendants cannot dispute Northpoint's right to take immediate and exclusive possession of Northpoint's Collateral.  This is exactly what Northpoint seeks to do with the Replevin Motion for provisional process of claim and delivery.

Because there is no basis for the Borrower Defendants to assert that the claim and delivery is wrongful or without sufficient cause under ORCP 82A(3), Northpoint requests that this Court set no bond.

### CONCLUSION

For the reasons above, Northpoint respectfully requests that the Court grant its Motions and enter a temporary restraining order as follows:

1.    Requiring the Borrower Defendants, immediately upon receipt by any means of the Court's order, to grant Northpoint access to their lots and any and all Collateral, wherever located, which are in the Borrower Defendants' possession, custody, or control, to enable Northpoint

Page 31 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

recover Northpoint's Collateral;

2.     Requiring Defendants to cooperate with Northpoint's efforts to repossess Northpoint's Collateral, and to facilitate Northpoint in accessing the Borrower Defendants' lots, and anywhere Northpoint's Collateral is located, to provide keys to locks and combinations to locks, and take all other necessary steps to allow Northpoint to remove Northpoint's Collateral;

3.     Requiring the Borrower Defendants to immediately turn over to Northpoint any and all of Northpoint's Collateral that the Borrower Defendants have removed from their lots without authorization from Northpoint or otherwise have in their possession and control; and

4.     Restraining the Borrower Defendants and their employees, other agents, and all persons in concert with them from using hindering, impeding, or otherwise interfering with Northpoint's efforts to recover Northpoint's Collateral.

Northpoint further moves the Court for an order requiring the Borrower Defendants to show cause, if there be any, why a preliminary injunction should not issue so that the order requested above continues and remains in effect while this action is pending.

In light of the serious risk of harm to Northpoint's Collateral, strong likelihood of success on the merits, the fact that the Borrower Defendants will not suffer irreparable harm by the granting of an injunction, and the fact that Northpoint maintains an undisputed right to immediate and exclusive possession of Northpoint's Collateral, Northpoint requests that the Court waive any injunction bond under Fed. R. Civ. P. 65(c) and ORCP 82A(3).

//

//

//

Page 32 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

A proposed order is submitted herewith.

Dated this 14th day of May, 2020.

SUSSMAN SHANK LLP

*/s/ Howard M. Levine*

By _____

Howard M. Levine, OSB No. 800730
Jesse C. Stewart, OSB No. 200478
*Attorneys for Northpoint Commercial Finance LLC*

(03450952);

Page 33 - PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO
SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER
FOR PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON
EUGENE DIVISION

NORTHPOINT COMMERCIAL FINANCE LLC, a Delaware limited liability company,

          Plaintiff,

      v.

AL'S TRAILER SALES OF SALEM, INC., an Oregon corporation; SUTHERLIN RV, INC., an Oregon corporation; REALITY RV AND TRAILERS INC., an Oregon corporation; A.O.A. GROUPS, INC., a California corporation; 4843 PORTLAND ROAD, LLC, an Oregon limited liability company; 347 MYRTLE STREET LLC, an Oregon limited liability company; JAMIE L. MCGOWEN; MURLYN MCGOWEN; SADIA SYED; NASEEMA DHAR; and UNDLEEB Y. DHAR,

          Defendants.

Case No. 6:20-cv-00785-MK

**[PROPOSED]**
ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY

## ORDER

This matter came before the Court on Plaintiff's Motion For Temporary Restraining Order, Order To Show Cause Why Preliminary Injunction Should Not Issue, And Order For Provisional Process – Replevin And Claim And Delivery pursuant to Fed. R. Civ. P. 64 and 65 and ORCP 83 and 85 [Docket No. _____] (the "Motion"). The Court having reviewed the Motion and supporting declarations of Brent Layton, Richard Molyneux, Wesley Waters, and Robert Palmer, and considered the evidence, the law, and the arguments of the parties, it is

ORDERED:

1.     Plaintiff's Motion is GRANTED;

ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY - Page 1

FURTHER ORDERED:

2.      Defendants Al's Trailer Sales of Salem, Inc., Sutherlin RV, Inc., and Reality RV and Trailers Inc. (collectively, the "Borrower Defendants") shall immediately upon receipt by any means of this Order, grant Northpoint access to their lots and any and all of Northpoint's Collateral, wherever located, which is in the Borrower Defendants' possession, custody, or control, to enable Northpoint recover Northpoint's Collateral;

3.      The Borrower Defendants shall cooperate with Northpoint's efforts to repossess Northpoint's Collateral, and to facilitate Northpoint in accessing the Borrower Defendants' lots, and anywhere Northpoint's Collateral is located, to provide keys to locks and combinations to locks, and take all other necessary steps to allow Northpoint to remove Northpoint's Collateral;

4.      The Borrower Defendants shall immediately turn over to Northpoint any and all of Northpoint's Collateral that the Borrower Defendants have removed from their lots without authorization from Northpoint or otherwise have in their possession and control; and

5.      The Borrower Defendants and their employees, other agents, and all persons in concert with them shall not hinder, imped, or otherwise interfere with Northpoint's efforts to recover Northpoint's Collateral.

6.      Plaintiff shall post a bond in the amount of _____.

Entered this _____ day of May, 2020.


_____
United States District Judge


**\*25745-001\PROPOSED ORDER GRANTING MOTION FOR TRO (03454416);1**


ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PROVISIONAL PROCESS – REPLEVIN AND CLAIM AND DELIVERY - Page 2